IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

REY SOTO-LOPEZ,

        Plaintiff,[1]

        v.

JOSEPH FALKE, *et al.,*

        Defendants.

Case No. 3:24-cv-00201-SLG

## SCREENING ORDER

On September 11, 2024, self-represented prisoner Rey Soto-Lopez ("Plaintiff") filed a complaint, a civil cover sheet, an application to proceed without prepaying the filing fee, a motion for court-appointed counsel with accompanying financial affidavit, and an unissued summons.[2] With his Complaint, Plaintiff also filed 11 pages of documents, including two letters from the Alaska Ombudsman, two pages from an 18-page police report dated February 23, 2024, and Plaintiff's legal research.[3] Plaintiff claims he was illegally searched and seized on May 3, 2023, and again on February 23, 2024. He believes the police and probation department are using his status as a probationer to escape liability for violating his

---

[1] Plaintiff is known by the surname Soto as well as Soto-Lopez, and other courts' records refer to plaintiff by the surname "Soto." Here, the Court refers to Plaintiff by the last name on his Complaint, "Soto-Lopez." Docket 1.

[2] Dockets 1–6.

[3] *See* Docket 1-1.

rights. Plaintiff names as Defendants Josph Falke, Gardiline Christopehr, and "FTO Piscoya APD," although the Complaint fails to clearly explain what role each named Defendant had in the scenarios described in the Complaint. For relief, Plaintiff seeks monetary damages and an injunction address the "subterfuge" and ordering agencies to stop violating people's rights.[4]

On December 31, 2024, Plaintiff also filed a Memorandum at Docket 8. This filing, a proposed addendum to the Complaint, is not a proper procedure to amend a complaint.[5] A plaintiff may not simply substitute part of a complaint or add new facts, claims, or defendants by motion or memorandum. The non-procedurally compliant filings at Docket 8 will not be considered.

The Court has now screened Plaintiff's Complaint in accordance with 28 U.S.C. §§ 1915(e) and 1915A. For the reasons discussed in this order, Plaintiff's Complaint fails to adequately state a claim for which relief may be granted. Further, because Plaintiff's state court revocation proceedings remain pending, at least with respect to Plaintiff's claims related to the May 3, 2023, search, permitting amendment as to such claims would be futile. Because the status of the state court proceedings with respect to the February 23, 2024, traffic

---

[4] Docket 1 at 9.

[5] *See* Fed. R. Civ. P. 15(a); *see also* Local Civil Rule 15.1

stop is unclear, Plaintiff will be granted leave to amend to file an amended complaint with respect to such claims only.

## SCREENING STANDARD

Under the Prison Litigation Reform Act, a federal district court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.[6] In this screening, a district court shall dismiss the case at any time if the court determines that the action:

> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.[7]

In conducting its screening review, a district court must accept as true the allegations of the complaint, construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.[8] However, a court is not required to accept as true conclusory allegations, unreasonable inferences, or unwarranted deductions of fact.[9] Although the scope of review generally is limited

---

[6] 28 U.S.C. §§ 1915, 1915A.

[7] 28 U.S.C. § 1915(e)(2)(B).

[8] *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir. 2003) (holding a court must construe pleadings filed by self-represented litigants liberally and afford the complainant the benefit of any doubt).

[9] *Doe I v. Wal–Mart Stores, Inc.,* 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

to the contents of the complaint, a court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice.[10] Such documents that contradict the allegations of a complaint may fatally undermine the complaint's allegations.[11]

Before a court may dismiss any portion of a complaint, a court must provide a plaintiff with a statement of the deficiencies in the complaint and an opportunity to amend or otherwise address the problems, unless to do so would be futile.[12] Futility exists when "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."[13]

## DISCUSSION

### I. Requirements to State a Claim

Rule 8 of the Federal Rules of Civil Procedure instructs that a complaint must contain a "short and plain statement of the claim showing that the [complainant] is entitled to relief[.]"[14] While a complaint need not, and should not, contain every factual detail, "unadorned, the defendant-unlawfully-harmed-me

---

[10] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

[11] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended by* 275 F.3d 1187 (2001) (noting that a plaintiff can "plead himself out of a claim by including ... details contrary to his claims").

[12] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (citing *Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir. 1988)).

[13] *Schreiber Distributing Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986).

[14] Fed. R. Civ. P. 8(a)(2).

accusation[s]" are insufficient to state a claim.[15] To determine whether a complaint states a valid claim for relief, a district court considers whether the complaint contains enough facts that, if accepted as true, "state[s] a claim to relief that is plausible on its face."[16] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]

Further, a federal court cannot act as an attorney for a self-represented litigant, such as by supplying the essential elements of a claim,[18] and it is not a court's responsibility to review filings or exhibits to identify possible claims. A complaint must allege that the plaintiff suffered a specific injury as a result of the conduct of a particular defendant, and it must allege an affirmative link between that specific injury and the conduct of that defendant.[19]

---

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp.*, 550 U.S. at 555).

[16] *Ashcroft,* 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this determination, a court may consider "materials that are submitted with and attached to the Complaint." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001)).

[17] *Ashcroft*, 556 U.S. at 678.

[18] *Pliler v. Ford,* 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

[19] *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## II. Civil Rights Claims under 42 U.S.C. § 1983 ("Section 1983")

To state a claim for relief under Section 1983, a plaintiff must allege plausible facts that, if proven, would establish that (1) the defendant acting under color of state law (2) deprived the plaintiff of rights secured by the federal Constitution or federal statutes.[20] To act under color of state law, a complaint must allege that the defendant acted with state authority as a state actor.[21] To be deprived of a right, the defendant's action needs to either violate a right guaranteed by the Constitution or an enforceable right created by a federal statute.[22] Section 1983 does not confer constitutional or federal statutory rights. Instead, it provides a mechanism for remedying violations of pre-existing federal rights.[23]

## III. *Younger* Abstention Doctrine

If an individual has pending state criminal charges or a pending probation violation, a federal court will typically abstain from hearing claims related to the search, arrest, or prosecution until the state court proceedings have concluded. The doctrine of *Younger* abstention, established by the U.S. Supreme Court in

---

[20] *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

[21] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

[22] *Buckley v. City of Redding*, 66 F. 3d 188, 190 (9th Cir. 1995); *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).

[23] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

Case No. 3:24-cv-00201-SLG, *Soto-Lopez v. Falke, et al.*
Screening Order
Page 6 of 20

Case 3:24-cv-00201-SLG    Document 9    Filed 02/03/25    Page 6 of 20

*Younger v. Harris*,[24] directs that "[w]hen there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."[25] The *Younger* doctrine underscores the principle of comity, respecting a state's ability to enforce its laws and adjudicate criminal charges and probation violations without federal interference.

**IV.    *Heck v. Humphrey* Bar**

The Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), further limits the ability of individuals to pursue Section 1983 claims related to their state court criminal proceedings. Under *Heck,* a plaintiff cannot bring a Section 1983 claim for damages if a judgment in their favor by the federal court would necessarily imply the invalidity of their state court conviction or sentence, unless the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.[26]

In parole revocation context, this means that an individual with a pending parole revocation proceeding in state court cannot successfully challenge the legality of their search and arrest under Section 1983 unless and until the

---

[24] 401 U.S. 37 (1971).

[25] *Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 72 (2013).

[26] *Heck*, 512 U.S. at 486-487.

revocation petition has been dismissed or denied.  As was explained by this Court to Mr. Soto-Lopez in 2021 when he brought his first federal court challenge to a state parole revocation proceeding, "[t]his Court may only address Mr. Soto-Lopez's claim that his parole was revoked [in] violation of his constitutional rights, after a successful court challenge to his parole revocation" in the state court.[27] Because the state revocation proceedings remain pending, at least with respect to Mr. Soto-Lopez's Section 1983 claims related to the May 3, 2023 residential search, must be dismissed;  further, granting leave to file an amended complaint with respect to that search would be futile so long as the renovation petition is pending in state court.

Pursuant to Rule 201 of the Federal Rules of Evidence, the Court takes judicial notice of the Courtview records of the Alaska Trial Courts, and Plaintiff's case in federal court.[28]  On April 30, 2021, Plaintiff brought similar claims against his probation officer, an Alaska State Trooper, and a towing company for what he claims was an alleged parole revocation "after he was stopped for speeding by an

---

[27] Case 3:21-cv-00061-JMK, Docket 8 at 5.

[28] Judicial notice is the "court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact; the court's power to accept such a fact." Black's Law Dictionary (12th ed. 2024); S*ee also United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) ("We may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal citations and quotation marks omitted.).

Alaska State Trooper."[29] The Court dismissed that case for failing to state a claim and explained to Mr. Soto-Lopez that the federal court could not address his claim that his parole was revoked in violation of his constitutional rights unless and until he had successfully challenged the parole revocation in the state court or the state court petition was dismissed.[30]

## A. Claims related to the Residential Search on May 3, 2023

Plaintiff claims on or about May 3, 2023, he notified his probation officer of his intent to move into a new residence.[31] Plaintiff claims this was a proposed residence—he had not yet signed a rental agreement, had not moved in, and did not have a key.[32] Plaintiff claims he was placed in handcuffs and driven to the proposed residence. He claims the officers "opened the door of the residence without any authorization" and searched the home. It is unclear whether anyone else was home at the time or if any cohabitant objected to the search.[33] The officers found drugs and remanded Plaintiff to custody.[34] On May 4, 2023, a petition to revoke Plaintiff's parole was filed in state court with respect to this incident, which

---

[29] *Soto-Lopez v. Farrar, et al.,* Case No. 3:21-cv-00061-JMK, Docket 8 at 1-2.

[30] *Id.* at 4-5 (explaining his parole revocation claims were barred by *Heck*).

[31] Docket 1 at 4.

[32] Docket 8 at 5.

[33] *Cf. Barajas v. City of Rohnert Park*, 159 F.Supp.3d 1016 (2016) (noting a search over a co-inhabitant's objection would be unreasonable as to the objecting co-inhabitant but not necessarily as to the probationer).

[34] Docket 1 at 5.

remains pending in the state court at this time.[35] Because Plaintiff's state court revocation proceeding has not been resolved, this Section 1983 action challenging the constitutionality of May 3, 2023, search cannot proceed at this time. As the Alaska Ombudsman pointed out, Plaintiff may bring his challenge to the legality of this search in his ongoing state proceedings.[36]

### B. Claims related to the Traffic Stop on February 23, 2024

Plaintiff claims he was pulled over while driving on or about February 23, 2024.[37] He claims the officers illegally searched the car and found a gun, drugs, and needles on the passenger side. Plaintiff and his passenger were both arrested and taken to jail.[38] Plaintiff claims he was told the charges were "initially dropped" but remained in custody. Then, he claims a grand jury issued a true bill for weapons misconduct, although he alleges the indictment was flawed because the prosecution did not present exculpatory evidence to the grand jury.[39] To proceed on this claim, Plaintiff must first demonstrate that all not criminal charges were

---

[35] *State of Alaska vs. Soto, Rey J.,* Case No. 1JU-00-00106CR, Docket Information 05/04/2023 (Case Reopened. Petition To Revoke Probation #2: Charge #7); Party Charge Information (Charge #7: PTRP3ANTECH - Probation/Parole Violation; PTRP Technical Violation - Filed in Anchorage).

[36] *See* Docket 1-1 at 2 (Letter from the Alaska Ombudsman declining further review of his complaints and recommending he contact his criminal defense attorney dated June 18, 2024.)

[37] Docket 1 at 3.

[38] Docket 1 at 3.

[39] Docket 1 at 4.

terminated in his favor and that this incident is an alleged violation of parole that is currently pending in the 2000 case. Assuming there are no pending state court proceedings related to this incident, Plaintiff still has not pleaded sufficient facts, which, if accepted as true, support a plausible claim against one or more of the named Defendants for illegal search and seizure or wrongful arrest and imprisonment.

Stopping an automobile and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment.[40] However, if the facts demonstrate probable cause or reasonable suspicion to justify a traffic stop, the stop is lawful even if the officer made the stop only because he wished to investigate a more serious offense.[41] Although Plaintiff claims he was "driving lawfully down the street,"[42] the police report filed with the Complaint states Plaintiff was pulled over

---

[40] *Colorado v. Bannister,* 449 U.S. 1, 4, n. 3 (1980) *(per curiam)* ("There can be no question that the stopping of a vehicle and the detention of its occupants constitute a 'seizure' within the meaning of the Fourth Amendment.").

[41] *Whren v. United States,* 517 U.S. 806, 810 (1996) ("[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). *See also Pulliam,* 405 F.3d at 787 ("The malfunctioning taillight provided lawful grounds for the stop, regardless of the officers' motivations."); *United States v. Wallace,* 213 F.3d 1216, 1219 (9th Cir.2000) ("[t]he fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop.").

[42] Docket 1 at 3.

Case No. 3:24-cv-00201-SLG, *Soto-Lopez v. Falke, et al.*
Screening Order
Page 11 of 20
Case 3:24-cv-00201-SLG   Document 9   Filed 02/03/25   Page 11 of 20

for having a "non-illuminated rear license plate."[43] Thus, it appears Plaintiff was lawfully stopped due to a traffic violation.

Once a car was stopped on the side of the street, officers are permitted to ask basic questions, such as whether the driver knew why he had been pulled over, whether he had identification, whether he had been arrested before, and whether he had any weapons in the vehicle.[44] These are "ordinary inquiries" incident to a traffic stop made as part of "ensuring that vehicles on the road are operated safely and responsibly," or else are "negligibly burdensome precautions" that an officer may take "in order to complete his mission safely."[45]

Here, the officers did just that. According to Plaintiff, they asked for a "license and registration from the driver"[46] and made contact with the passenger.[47] It is unclear from the Complaint or the two-page excerpt from the police report[48] why the officers elected to order the driver and passenger out of the vehicle. However, even if Plaintiff were not a parolee with a diminished expectation of privacy, officers

---

[43] Docket 1-1 at 4.

[44] *United States v. Nault*, 41 F.4th 1073, 1078–79, 1081 (9th Cir. 2022).

[45] *Rodriguez v. U.S.*, 575 U.S. 348, 355–56 (noting officers during traffic stops may check licenses, check for outstanding warrants against the driver, and inspect registration and insurance).

[46] Docket 1 at 3.

[47] Docket 1 at 3.

[48] *See* Docket 1-1 at 4-5 (pages 2-3 of an 18-page police report dated February 23, 2024).

Case No. 3:24-cv-00201-SLG, *Soto-Lopez v. Falke, et al.*
Screening Order

may lawfully order a driver and any passengers out of a vehicle and conduct a "frisk" or "pat-down search" during a lawful investigatory stop if the officer reasonably suspects they are armed and dangerous.[49] "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion."[50] Additionally, an officer may lawfully arrest an individual without a warrant if he has probable cause to believe that a crime has been committed. Probable cause exists where the "available facts suggest a fair probability that the suspect has committed a crime."[51]

Here, it appears Plaintiff has not been convicted or sentenced based on the February 23, 2024 traffic stop, but the Complaint fails to describe the criminal charges that were brought against him and how those charges were terminated favorably to him. And it is unclear if this incident is the subject of an amended petition for parole revocation in the 2000 case; if this traffic stop is the subject of the pending parole revocation proceeding, it cannot proceed in federal court at this time. Even if the case details were available on Courtview (which it appears they

---

[49] *Arizona v. Johnson,* 555 U.S. 323, 327 (2009). *See also Rohde v. City of Roseburg,* 137 F.3d 1142, 1144 (9th Cir. 1998) ("[A]n officer may always order the driver and passenger out of a vehicle during a traffic stop ... and may even handcuff and move both if [the officer] reasonably fears for his safety.").

[50] *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (emphasis in original).

[51] *Tatum v. City & Cnty. of San Francisco,* 441 F.3d 1090, 1094 (9th Cir. 2006).

are not)—it is Plaintiff's responsibility to gather and plead the necessary facts to support his claims. In addition, the Complaint on this incident is deficient because it does not explain what each named Defendant did at that traffic stop that violated Plaintiff's federal constitutional rights.

For the foregoing reasons, the Complaint is DISMISSED. Plaintiff is accorded **60 days** to file an amended complaint that attempts to correct the deficiencies identified in this order with respect to the February 23, 2024 traffic stop only. An amended complaint shall not plead any claim with respect to the May 3, 2023 incident. Although the Court may consider documents attached to a complaint, documents incorporated by reference in the complaint, or matters of judicial notice, the scope of review at the screening stage is generally limited to the contents of the complaint.[52] Plaintiff may attach to an amended complaint relevant court records and/or police reports that he specifically references in the amended complaint that he believes support his claims. However, all the necessary information must be included within the body of the amended complaint itself.

---

[52] *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

## V. Plaintiff's motion for court appointed counsel is DENIED

A litigant has no right to an appointed attorney in a federal civil action.[53] Pursuant to 28 U.S.C. § 1915(e)(1), a district court "may request an attorney to represent any person unable to afford counsel." However, a district court's decision to request counsel for a self-represented litigant in a civil action is discretionary and granted only in exceptional circumstances.[54] Further, although Section 1915(e)(1) permits a court to request an attorney represent any person unable to afford counsel, the Court cannot force an attorney to accept a case. The Court can only appoint an attorney who volunteers to represent a litigant.

The Court finds that on the current record, Plaintiff has not demonstrated a likelihood of success on the merits. Further, it appears that Plaintiff can adequately articulate his claims, even if those claims may not be viable causes of action under Section 1983. Further, although Section 1915(e)(1) permits a court to request a volunteer attorney, this Court currently has no list of volunteer attorneys from which it may request counsel to represent Plaintiff. If a volunteer attorney comes forward to accept this case, the Court may appoint counsel at that time. For these reasons,

---

[53] *See Turner v. Rogers*, 564 U.S. 431, 441 (2011) ("[T]he Sixth Amendment does not govern civil cases."); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) ("Generally, a person has no right to counsel in civil actions.").

[54] *Palmer,* 560 F.3d at 970 ("[A] court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1).") (citations omitted).

Plaintiff's motion for court-appointed counsel at Docket 4 is **DENIED without prejudice.**

### VI. Filing an Amended Complaint

An amended complaint replaces the prior complaint in its entirety.[55] Any claim not included in the amended complaint will be considered waived. An amended complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[56] A plaintiff need not file exhibits or evidence, such as affidavits, to attempt to prove his case at the pleading stage.[57] Rather, a complaint need only to allege sufficient factual matter, accepted as true, to state a plausible claim for relief.[58] A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.

An amended complaint must contain separately numbered, clearly identified claims. If handwritten, it must be legible. Each claim should identify the specific injury that the plaintiff is alleging has occurred, when that injury occurred, where that injury was caused, and who the plaintiff is alleging caused that specific injury.

---

[55] *See* Fed. R. Civ. P. 15; District of Alaska Local Civil Rule 15.1.

[56] Fed. R. Civ. P. 8(a)(2).

[57] Although the Court may also consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, the scope of review at the screening generally is limited to the contents of the complaint. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003).

[58] Fed. Rule Civ. Proc. 8(a)(2).

In addition, the allegations of the amended complaint must be set forth in sequentially numbered short paragraphs, and with no paragraph number being repeated anywhere in the complaint.[59] Rule 10(b) of the Federal Rules of Civil Procedure requires that "[a] party must state its claims or defenses as numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Although Plaintiff is being given an opportunity to file an amended complaint, he shall not unjustifiably expand the scope of the case by alleging new unrelated parties or claims. An amended complaint must not include any claims or defendants for which Plaintiff lacks a sufficient legal or factual basis. An amended complaint may not include any defendants or claims that have been dismissed with prejudice. An amended complaint should not include any reference to the May 3, 2023, incident so long as the parole revocation proceedings with respect to that incident remain pending in the state court.

If Plaintiff chooses to file an amended complaint, the Court must screen the complaint to determine whether it is subject to dismissal or whether there are any plausible claims that may proceed to the next stage of litigation. Should any amended complaint proceed beyond the screening stage, the Court will order

---

[59] A complaint must consist of continuously numbered paragraphs from beginning to end; do not start each new section with number 1. This allows ease of reference to the various allegations in the complaint and permits the defendants to admit or deny each specific allegation by paragraph.

service and issue an order setting a schedule for discovery and dispositive motions.

**IT IS THEREFORE ORDERED:**

1. Plaintiff's Complaint at **Docket 1 is DISMISSED.** The Court grants Plaintiff leave to file an amended complaint in accordance with the guidance provided in this order.

2. Plaintiff is accorded **60 days** from the date of this order to file either:

    a. <u>First Amended Complaint</u>, in which Plaintiff revises his complaint to address the deficiencies identified in this order. An amended complaint should be on the Court's form, which is being provided to Plaintiff with this order; OR

    b. <u>Notice of Voluntary Dismissal</u>, in which Plaintiff elects to close and end the case.

3. If Plaintiff does not file either an Amended Complaint or Notice of Voluntary Dismissal on the Court's form, this case may be dismissed under 28 U.S.C. § 1915(e)(2)(B) without further notice to Plaintiff.

4. Plaintiff's application to waive prepayment of the filing fee at **Docket 3 is GRANTED.**

5. Federal law only allows the Court to waive a prisoner's prepayment of the fees associated with civil lawsuits. Prisoners must pay the filing fee

incrementally until paid in full, regardless of the outcome of the action.[60]  Should Plaintiff proceed with this lawsuit and sufficiently plead a claim for relief in an amended complaint, the Court will issue a separate order on the collection for the filing fee.

6. If Plaintiff is released while this case remains pending and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) pay the unpaid balance of his filing fee or (2) file a Non-Prisoner Application to Waive the Filing Fee (Form PS11).[61]  Failure to comply may result in dismissal of this action.

7. Plaintiff's motion for court-appointed counsel at **Docket 4 is DENIED without prejudice.**

8. Self-represented litigants are expected to review and comply with the Federal Rules of Civil Procedure, the District of Alaska's Local Civil Rules, and all Court orders.[62]  Failure to do so may result in the imposition of sanctions authorized by law, including dismissal of the action.

9. Self-represented litigants must be ready to diligently pursue each

---

[60] 28 U.S.C. § 1915(b)(1)&(2).

[61] The Court's template forms are available upon request from the Clerk's office and on the Court's website at https://www.akd.uscourts.gov/forms.

[62] Federal Rules of Civil Procedure: https://www.uscourts.gov/rules-policies/current-rules-practice-procedure/federal-rules-civil-procedure; Court's Local Rules: https://www.akd.uscourts. gov/court-info/local-rules-and-orders/local-rules.

Case No. 3:24-cv-00201-SLG, *Soto-Lopez v. Falke, et al.*
Screening Order

case to completion. Missing a deadline or otherwise failing to pursue a case may result in the dismissal of the action.

10. At all times, all parties shall keep the Court informed of any change of address or phone number. Such notice shall be titled "Notice of Change of Address." The Notice shall contain only information about the change of address, and its effective date.[63] The Notice shall not include requests for any other relief. A Notice of Change of Address form, PS23, may be obtained from the Clerk of Court, if needed. If a plaintiff fails to keep a current address on file with the Court, that may result in a dismissal of the case without further notice to the plaintiff.

11. With this order, the Clerk is directed to send: (1) form PS01, with "FIRST AMENDED" written above the title "Prisoner's Complaint Under the Civil Rights Act 42 U.S.C. § 1983"; (2) form PS09, Notice of Voluntary Dismissal; and (3) form PS23, Notice of Change of Address.

DATED this 3rd day of February 2025, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
SHARON L. GLEASON
UNITED STATES DISTRICT JUDGE

---

[63] *See* District of Alaska Local Civil Rule 11.1(b) (requiring a notice of change of address to be filed, as "[s]elf-represented parties must keep the court and other parties advised of the party's current address and telephone number").